Wilkinson *v.* Daniels.

---

## WILKINSON *v.* DANIELS.

Where G assigned a note to C., Oct. 24, 1841, and on the 18th of December following, C. assigned the same to W., without recourse ; some time after W. assigned in the same way to B., from whom the note came to the possession of D ; it was held that as B. had no recourse on W., and W. none upon C., that C. was not responsible to any subsequent indorsee ; it was also held that G. having been discharged from all liability as an

9

indorser to all the indorsees, except D., by lapse of time and negligence to collect, and D. having executed a release to G., rendered him a competent witness.

Illegal testimony will not vitiate the proceedings, when it is upon a point not properly before the court; and hence a proceeding to foreclose a mortgage cannot be affected by improper testimony in relation to the note, as the mortgage is the basis of the action.

After a bill is dismissed as to one of the defendants, he appearing as one of the makers of the note, for which the mortgage was given as security, and interested in defeating a recovery upon the mortgage, he should not be admitted as a witness in the case.

Under the statute authorizing parties to contract for interest not exceeding twenty per centum per annum, it was legal to make a note drawing twelve per cent., and if not paid when due, fifteen per centum per annum. It will not be considered by a court of equity as a contract for a penalty, but for interest after a given day.

Where B. signed the note as security, and subsequently took it up, it was not rendered *functus officio*; he might re-issue the note as often as he took it up.

B. and W. not being parties to the mortgage, the bill to foreclose it was properly dismissed as to them.

In a decree of foreclosure the district court has no authority to order the sale of any other land than that described in the mortgage.

APPEAL *in Chancery, from the Cedar District Court.*

This was a bill in chancery, filed by Daniels, to foreclose a mortgage against Wilkerson. Bill states that Wilkerson owned the E. half of N. W. quarter of section 9. T. 8. N. R. 3. W. That Philip Wilkerson, John W. Wilkerson, and J. R. Brincy, on the 20th of April, 1843, being indebted to petitioner .$357, on a note given by defendants, to R. Ransford, and at that time in possession and ownership of petitioner, Philip Wilkerson to secure the payment of the note at a future day, gave a mortgage to petitioner, on the land above described, dated April 20, 1843, conditioned that the payment of the note should be made by Aug. 20, 1843. The money was not paid at the time named, and petitioner applied to Philip, John, and to Brincy for payment, and each refused.

Philip Wilkerson answers that he gave the note, signed it as security for his brother John; knows nothing about Daniels being the owner of it; avers, according to his best know-

ledge and belief, that Briney, one of the makers, had, before the mortgage was given, taken up and paid the note in full to John Wolf, the holder thereof, and that Wolf passed it away, without assignment; that when Briney had taken it up, the note had performed its office, and to put it in circulation again, was illegal and fraudulent, both in Briney and in Daniels, who purchased of him. Defendant gave the mortgage without any knowledge that Briney had paid it to Wolf, the holder, or to any one else, and insists that the mortgage which was given without consideration, is inequitable, and void. He also states, that without any knowledge on the part of defendant, his brother John Wilkerson had paid on the note, before the mortgage was given, and not credited thereon, $150, by a note on William Edgar, which Daniels agreed should be credited on the note, as soon as Edgar should acknowledge that the note was correct, and defendant avers that Edgar acknowledged the note correct, Oct. 1, 1843.

John Wilkerson pleaded in bar; 1. that the note was paid in full, by Briney, the maker, before it came to Daniels' hands; 2. that he paid Daniels .$150 on the note before suit commenced; and 3. denied to. the court of chancery the power to enforce the penalty named in the note, and as claimed in the bill.

J. R. Briney pleaded that he paid John Wolf the note in full.

Hosea W. Gray, as witness for the petitioner, testifies that he assigned the note to Addison Daniels. While he was the holder, both Philip and John Wilkerson acknowledged the justness of the note, and expected to pay it. No payment was made whilst he held it.

Accompanying this declaration is petitioner's release to the witness.

The same witness proves the handwriting of the indorsers, except Ransford. In regard to his indorsement, he says, "the signature of Richard Ransford was acknowledged by said Ransford to me, to be his signature."

S. Whicher, for the appellant. This cause comes up to be tried on its merits, in the same manner as if no decree had

been made in the court below. The appellant will limit himself to making a few points in the case, deeming an argument unnecessary.

1. Hosea W. Gray is incompetent as a witness. He assigned the note to Craig, and not to Daniels. He is liable to Craig at law, and Daniels' release does not discharge him from liability. Indeed, he is not liable to Daniels at all at law; and, to say the most of it, it is doubtful in chancery. The release, then, amounts to nothing. The witness comes with all the weight of liability to Craig, resting upon him. If the witness can make defendant pay the money, he will be relieved from all responsibility to Craig.

2. Not only is this witness not competent, but the testimony he gives is illegal. His testimony, that he heard Ransford say he had signed the note as indorser, is but hearsay. Cowen and Hill's Notes, part first, 164, 555, 663.

What the defendant said about it might be evidence direct; but Ransford is not a party to the suit; is not, in the language of the book above cited, "identified in interest" with the defendant.

But still more than this, the witness says he assigned the note to Addison Daniels. Is this true? Does not the note itself show, by the indorsement, that he assigned it to Craig, and not to Daniels?

If it be necessary to prove the assignments, (and that it is, see 1 Eq. Digest, 278,) then they are not legitimately proved. If it be unnecessary to prove the assignments, then the suit is founded on the mortgage alone, and John Wilkerson should have been admitted to testify, after the dismissal of the bill to him, as to the payment; for he had no interest to defeat the mortgage; but rather to make its proceeds pay the note.

The rules of evidence and rules of decision are the same in courts of law, and in courts of equity. 3 Eg. Dig., 357.

A court of equity will not aid a party to enforce a penalty. The penalty for not paying promptly, as stipulated in the note, amounts now to more than $40, besides the exorbitant interest first reserved, of twelve per centum per annum.

When a bill or note is paid by the acceptor, or maker, it is *functus officio* at common law, and no longer re-issuable. Chitty on Bills, 449, referring to *Callow* v. *Lawrence*, 3 M. and S., 97. *Hubbard* v. *Jackson*, 4 Bing., 390; 1 Moore and P., 11; 3 Car. and P., 134. *Holroyd* v. *Whitehead*, 1 Marsh., 130; 2 Starkie R., 251.

The parties pleading should not have been dismissed, and the truth of their pleas should have been tried by a jury.

The decree is rendered against lands not named in the mortgage. Compare them.

The appellant asks that the petitioner may be referred to a court of law for redress.

*W. G. Woodward*, for the respondent. This is a bill to foreclose a mortgage against Philip Wilkerson, alone originally. John W. Wilkerson and J. R. Briney were afterwards improperly made parties. On the hearing, the bill was dismissed, as to John Wilkerson and said Briney. It now stands as a bill against Philip, alone.

I wish to fix one principle at the outset. Any party to a note, or bill, having taken it up, or paid it, may issue it again; but he will not thereby render any subsequent party liable. Thus, a drawer of a bill, having taken it up, may re-issue it; and so, *ad infinitum*, till the acceptor takes it up. The original maker of a note stands in the same relation to his note that an acceptor does to a bill. And one who appears on a note, to be a surety, is to the note what a drawer is to a bill. He is not the ultimate payer. The maker is responsible to him, if he, the surety, pays it.

As to the maker, then, the surety may re-issue; but he cannot render liable the parties *posterior* to himself. For these principles, see Chitty on Bills, 248, 249, 250, *n.* (1), p. 271, 272, 451, and *n.* (20); the case of *Claridge* v. *Dalton*, 4 M. and S., 232, 233. On the same principle, indulgence to a prior party discharges all subsequent ones. Chitty on Bills, 444.

But when a party takes up a note, all prior to him remain

liable to him. The maker of a note is he who is ultimately liable, and a surety is not such ; at least, where he appears on the face of the note to be surety.

Now by these principles try this note. If Briney takes it up, are not Philip and John liable to him ? and if so, cannot he pass it, leaving only himself, John, and Philip liable ? Then, if it come into Daniels' hands from Briney, none are liable to Daniels who were not so to Briney. No person is injured. It does not appear but that Daniels became holder of the note before it became due; for it fell due on 1st January, 1843, and in April, Philip gives the mortgage in consideration of farther time.

As to Briney and Daniels. Both Philip and John are original makers, even though Philip may really be surety, as between him and John. Now, in April, 1843, Philip makes a mortgage to Daniels, receiving the payment of this note, and recognizing the note, and securing it in terms to be the property of Daniels, and that, of course, with the indorsement to Briney on it.

Let us now see the objections of appellant. 1. H. W. Gray is an incompetent witness, for he is liable to Craig. Gray is liable to no one on the note. It having come into the hands of Briney, the surety, all subsequent parties are discharged. Craig can be liable to no one, and therefore no one to him. There was no need of the release to Gray.

The present holder, Daniels, has taken security from, and given time to, one of the makers ; and therefore, again, all posterior parties are discharged from Gray to Wolf, and even Briney himself. Gray, then, is a good witness. But it is said, to discredit him, I suppose, that he assigned to Craig and not to Daniels, as in the indorsement. Taking the law into view, there is no discrepancy here. Gray may have assigned to Daniels by blank indorsement, and Daniels to Craig ; and Craig filled up the indorsement, and then passed it, so that it should come round to Daniels again.

That Daniels is the rightful holder cannot be doubted, since the mortgage expressly admits it. Gray's testimony is com-

Wilkerson *v.* Daniels.

petent, then, but it is not needed in the case, even to prove the indorsements; they need not be proved. Daniels does not hold under an indorsement, but by an assignment in equity, recognized by the mortgage.

2. The declarations of Ransford, that he was a party, and liable to Gray, are good testimony, and admissible.

3. John W. Wilkerson should have been admitted to testify. Not so. Philip is the only defendant to this bill; and he says in his answer that he was surety for John. According to this, John is the ultimate party liable; and is liable to Philip. Now if John can show the note paid, he not only saves Philip, but he saves himself from liability to Philip. This is clear.

4. *Penalty.* There is no penalty in this note. The highest rate reserved is legal interest, as the law then was. But, if there is penalty, the court will give all but the penalty—the note and the legal interest.

5. The parties, John W. and Briney, must have been dismissed. They have no connection with the mortgage, to foreclose which the bill is brought.

6. The bill and decree vary in describing the land. The bill calls it in town, 8 N., the decree, 80 N. In the bill it is described as in Cedar county, Iowa; the court can know, that town 80, and not 8, north, is in Cedar county. The decree corrects the error. I do not know whether this is not an error in transcribing.

7. The appellant asks that the petitioner may be referred to a court of law for redress.

*Opinion by* HASTINGS, C. J. The appellee filed his bill in chancery to foreclose a mortgage executed by appellant, to secure the payment of $357, due by a promissory note drawn by appellant and others, of which the following is a copy :—

" $283.

Twelve months from the first of January next, we, or either of us, promise to pay Richard Ransford, or order, the

sum of two hundred and eighty-three dollars, with twelve per cent. interest; and, if not paid to the day, fifteen per cent. from date, for value received of him this 29th day of July, 1841:

JOHN W. WILKERSON,     [Seal.]

PHILIP WILKERSON,     [Seal.]

J. R. BRINEY, *Security.*

INDORSEMENTS.

" Pay the within note to Hosea W. Gray.   Oct. 24, 1841.
RICHARD RANSFORD."

" October 24, 1841.   I assign the within note to Thomas Craig, for value received of him:
H. W. GRAY."

" I assign the within to John Wolf, without recourse on me. Oct. 18, 1841:
THOMAS CRAIG."

" I assign the within to J. R. Briney, without recourse.
JOHN WOLF."

After several continuances, demurrers, and pleas, the appellee obtained a decree of foreclosure at the May term of Cedar district court; from which decree the appellants prayed an appeal, which was allowed, and the case is thus brought to this court.

We will proceed to consider and dispose of the several points suggested by appellant's solicitor.   Appellant first alleges, that Hosea W. Gray was incompetent as a witness, for reason of interest; that he is liable to Craig as indorser.

It is true, that Gray assigned the note to Craig, but Craig assigned the note to Wolf without recourse, and Wolf assigned the same to Briney without recourse; and the note afterwards fell into the hands of Daniels, the appellee.   Briney has no recourse on Wolf, nor has Wolf recourse on Craig, and Craig is not liable to any subsequent indorsee.   Gray is not liable to Craig, nor to any subsequent indorsee, except Daniels.

Wilkerson v. Daniels.

Gray is discharged from all liability, as an indorser, to all the indorsees except Daniels, by lapse of time and want of diligence in collecting the note.

Then Gray is liable only to Daniels, and Daniels executed a release to Gray, and thus, being divested of all liability as an indorser, Gray became a competent witness.

But it is said, by the appellant, that Gray's testimony is illegal as to the proof of Ransford's signature. The testimony of Gray in proof of the signatures of the indorsers was unimportant; and however illegal any part of his testimony might be in relation to the genuineness of the signatures of the indorsers, such illegal testimony would not vitiate the proceedings on the mortgage. The suit is not founded on the note— it need not have been introduced. The mortgage is the basis of the proceedings, and on the foreclosure thereof the introduction of the note was not necessary.

Another point, suggested by appellant, that Gray testifies that he assigned the note to Daniels, and that the copy of the indorsements shows that he assigned the note to Craig. Is the indorsement of Gray to Craig inconsistent with his testimony that he assigned the note to Daniels? From Gray's testimony it may be fairly inferred that Briney transferred the note to Gray, and that Gray then transferred the note to Daniels. This second assignment of Gray may have been on a separate paper; and inasmuch as Daniels is in possession of the note, it must be presumed that Gray did assign or transfer the note to Daniels, as stated in his deposition.

It is argued by appellant's solicitor, that John W. Wilkerson should have been admitted as a witness, after the bill was dismissed. As to him, we think not. Wilkerson was clearly interested in reducing the amount sought to be recovered. On the face of the note he is a maker, and liable as such, and was interested equally with the appellant in defeating any recovery on the mortgage.

The statute in force, at the date of the execution of the note, regulating interest, permitted parties to contract for the payment of interest at the rate of twenty per centum per annum.

The makers of this note agreed to pay twelve per centum per annum from date, and if not paid to the day, fifteen per cent. This cannot be construed as a penalty, against which a court of equity will afford relief. It is a contract to pay fifteen per cent. interest per annum on a contingency, which we think the law then permitted. It is farther argued by appellant, that when the note was taken up by Briney it became *functus officio*, and was no longer re-issuable.

Briney appears on the face of the note a surety, and though liable as a maker, as to the makers of the note he is a surety, and as such, when he put the note in circulation, he assumed the character of a drawer, and could re-issue the note as often as he should take it up.

"A bill of exchange is negotiable, *ad infinitum*, until it has been paid by the acceptor, and therefore, if the drawer pay it after it is due, he may, even a year and a half afterwards, indorse it to a fresh party, who may sue the acceptor thereon." Chitty on Bills, 249.

By express legislative provision of the stamp laws in England, a bill once paid by the acceptor is no longer re-issuable; but in this country, if a promissory note be paid by the maker, and again by him put into circulation, he is liable thereon, as the maker, to any indorser into whose hand the same may fall, after the re-issuing of the same.

It is further argued, that the parties defendants, John W. Wilkerson and said Briney, should not have been dismissed, and that the truth of their pleas should have been tried. They ought not to have been made parties. They were not parties to the mortgage, and it is not for the appellant to complain of the dismissal of the bill as to said Briney and John W. Wilkerson.

As to the last point made by the appellant, that the decree is rendered against lands not named in the mortgage, it appears that the lands described in the mortgage are in township eight. And such is the description of the premises in the bill; there being no averment in the bill that this description of the township was erroneous. In the decree there is an

order for the sale of said premises described as in township eighty. The statute on mortgages requires that the premises described in the mortgage shall be sold, &c. The premises described in the decree are not the premises described in the mortgage, and the court below was not authorized to decree a sale of lands other than those described in the mortgage. So much, therefore, of the decree which orders a sale of the east half of the north-west quarter of section No. 9, in township No. 80, north of range No. 3, west of the fifth principal meridian, will be reversed.

We see no reason for reversing any other part of the decree of the court below; and the same is affirmed, and a decree will be entered accordingly.

Decree affirmed in part.